PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendant
New Jersey Transit Corporation

By:  Adam K. Phelps
     Deputy Attorney General
     Department of Law and Public Safety
     Division of Law
     One Penn Plaza East - 4th Flr.
     Newark, New Jersey 07105
     (973) 491-7035

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROGER FOUCHE, | Civil Case No.: 2:09-cv-03766 |
| Plaintiff, | Civil Action |
| vs. | DEFENDANT NEW JERSEY TRANSIT CORPORATION'S STATEMENT OF UNDISPUTED MATERIAL FACTS |
| NEW JERSEY TRANSIT CORPORATION, | |
| Defendant. | |

Comes now Defendant New Jersey Transit Corporation ("NJ Transit"), by and through counsel, and states the following Undisputed Facts.

1. NJ Transit, a statewide transportation agency, is a "24-7" operation, running buses all hours of the day, seven days a week. (Affidavit of Adam K. Phelps, Ex. A, deposition of Roger Fouche 87:20-23; Phelps Affidavit Ex. B, deposition of ATU Local 880 President Joseph Sullivan 30:20-24).

2. Roger Fouche was hired as a part-time bus operator at NJ Transit's Newton Ave. Garage on or about July 20, 2006. Fouche is a "born again" Christian, who requires his Sabbath, Sunday, off. (Affidavit of Adam K. Phelps, Ex. A, Fouche Dep. 54:14-57:23).

3. Part time operators enjoy increased scheduling flexibility, and are largely able to determine their own hours of work, up to thirty hours per week. (Phelps Affidavit Ex. C, Deposition of Nancy Giammusso 18:10-24; Phelps Affidavit, Ex. E).

4. While working as a part time operator, NJ Transit accommodated Fouche's religious Sabbath needs, by providing Fouche with his Sabbath off. (Phelps Affidavit Ex. A, Fouche Dep. 76:14-20).

5. Fouche applied to be a full time operator in or around December 2007. (Phelps Affidavit Ex. C, Giammusso Dep. 21:3-11; Phelps Affidavit, Ex. G, Part Time to Full Time Promotion Letter).

6. NJ Transit's job postings for full time operators state that a part time operator is not eligible for promotion to full time operator at NJ Transit unless he is "able to work all shifts, including weekends, holidays, and overtime, as needed." (Phelps Affidavit Ex. C, Giammusso Dep. 12:2-12; Phelps

2

Affidavit Ex. F, copy of the NJ Transit Talent Search Announcement for December 2007).

7. Availability to work all shifts, including weekends, is a condition of employment as full time operator, because of the bona fide seniority system established in the negotiated labor agreement, or collective bargaining agreement ("CBA"), between NJ Transit and the Amalgamated Transit Union New Jersey Council ("ATU"), which represents bus operators, including Fouche. (Phelps Affidavit Ex. C, Giammusso Dep. 27:16-20; Phelps Affidavit Ex. E, a copy of the CBA between NJ Transit Bus Operations, Inc., and ATU New Jersey Council; Phelps Affidavit Ex. F).

8. According to Section 10 of the CBA between NJ Transit and the ATU, bus operators choose all work based on seniority. (Phelps Affidavit Ex. E, a copy of the CBA between NJ Transit Bus Operations, Inc., and ATU New Jersey Council). Seniority is sacred to the ATU and its members. (Phelps Affidavit Ex. B, Sullivan Dep. 36:1-16).

9. Setting aside a specific piece of work for the benefit of one operator, regardless of the reason, is a violation of the seniority provisions of the contract, and would subject NJ Transit to a grievance and an unfair practice charge from the Union. (Phelps Affidavit Ex. B, Sullivan Dep. 49:12- 51:10).

10. Through the standard scoring process, Fouche was eligible for promotion and offered a full time position beginning January 12, 2008. (Phelps Affidavit Ex. C, Giammusso Dep. 15:15-17:10).

11. Prior to Fouche accepting the full time position, Fouche met with his Garage Supervisor, Nancy Giammusso, who explained to Fouche that, if he accepted the position as a full time bus operator, he would do so without a guarantee of Sunday off, due to Fouche's low seniority as a newly promoted full time bus operator. (Phelps Affidavit Ex. C, Giammusso Dep. 17:2-18:4; Phelps Affidavit, Ex. H, Memo from Giammusso to Bill Hemphill dated March 27, 2008).

12. By Fouche's own admission, because of his need for Sunday off to observe the Sabbath, he did not meet the necessary requirement that full time operators must be available to work all shifts, including weekends, holidays and overtime, as needed. (Phelps Affidavit, Ex. A, Fouche Dep. 84:17-85:6).

13. Fouche subsequently met with Nancy Giammusso on or about December 28, 2007, during which Fouche signed the acceptance letter, and presented a letter from his church requesting a Sabbath accommodation for Fouche. (Phelps Affidavit Ex. C, Giammusso Dep. 25:8-27:9; Phelps Affidavit Ex. G).

14. According to the President of ATU Local 880, allowing Mr. Fouche Sundays off when he was scheduled to work on Sundays,

4

as requested, would have been a breach of the CBA by NJ Transit. (Phelps Affidavit Ex. B, Sullivan Dep. 102:2-16).

15. Consistent with NJ Transit and the ATU's position on the seniority provisions of the CBA, Giammusso denied Fouche's request for an accommodation during the December 28, 2007 meeting. (Phelps Affidavit Ex. C, Giammusso Dep. 26:14-27:19).

16. After receiving the letter from Fouche's Church, Giammusso considered Fouche to have requested a religious accommodation, specifically, the Sabbath off, and contacted William Hemphill ("Hemphill"), NJ Transit's Director of EO/AA & Diversity Programs, the person responsible for approving or denying all religious accommodations. (Phelps Affidavit Ex. C, Giammusso Dep. 30:5-31:13; Phelps Affidavit Ex. D, Deposition of William Hemphill 8:13-9:22).

17. Hemphill considered Fouche's request for accommodation, and rejected Fouche's requested accommodation because approving it would violate the CBA section on seniority. (Phelps Affidavit Ex. D, Hemphill Dep. 8:13-10:23).

18. Despite the lack of accommodation, Fouche chose to become a full time operator beginning January 12, 2008 and proceed to bid on work for the January 2008 "Pick." Fouche's seniority was second from the bottom. (Phelps Affidavit Ex. C, Giammusso Dep. 23:14-23).

19. During the January 2008 pick, despite Fouche's low seniority, Fouche was able to choose work that gave him Saturdays and Sundays off. (Phelps Affidavit Ex. A, Fouche Dep. 108:3-9; Phelps Affidavit Ex. H).

20. According to Fouche, given that he was able to bid for work that gave him Sunday, his Sabbath, off, he did not need an accommodation in January 2008. (Phelps Affidavit Ex. A, Fouche Dep. 109:11-22).

21. However, in early February 2008, a full-time operator with significantly higher seniority, who had been out with an illness, returned, and a "Bump-Bid" commenced. (Phelps Affidavit Ex. A, Fouche Dep. 109:23-110:17; Phelps Affidavit Ex. H).

22. In the ensuing February bump bid, which ended February 16, 2008, Fouche was bumped by another employee with more seniority from the work he picked in January, and Fouche selected work that required him to work on Sundays until the next pick in April. (Phelps Affidavit Ex. A, Fouche Dep. 109:23-110:17; Phelps Affidavit Ex. H).

23. On or about February 18, 2008 Fouche again requested a Sabbath accommodation in a conversation with Hemphill. (Phelps Affidavit Ex. A, Fouche Dep. 132:1-21).

24. Therefore, as a term and condition of employment, as embodied in the CBA and established practices, including the exercise of seniority rights by Fouche and others in his title,

6

Fouche was obligated to work on Sundays beginning February 17, 2008 until the next pick. (Phelps Affidavit Ex. C, Giammusso Dep. 38:16-22).

25. Failure to be available for work in accordance with the schedule of that work is a violation of Fouche's terms and conditions of employment, resulting in discipline in accordance with the CBA. (Phelps Affidavit, Ex. E).

26. On Sunday, February 17, 2008, and Sunday February 24, 2008, Fouche failed to report for work as scheduled, and failed to notify the Depot Master of Newton Ave. Garage prior to Sunday or within four hours of his start time. (Phelps Affidavit, Ex. A, Fouche Dep. 144:24-145:25; Phelps Affidavit, Ex. I, Fouche Disciplinary records of February 17 and 24, 2008). Under NJ Transit rules, Fouche was absent without permission, in violation of transportation rule 402, or was what is called in labor relations parlance, "AWOL," for those two days. (Phelps Affidavit Ex. C, Giammusso Dep. 41:8-44:23; Phelps Affidavit, Ex. J, Transportation Employees Service Guide Rule 402).

27. Failing to report for work as scheduled without notifying anyone is a serious offense. NJ Transit has a strong, and undisputed, interest in preventing bus operators from failing to appear for work. The typical discipline for two AWOLs is discharge. (Phelps Affidavit Ex. C, Giammusso Dep. 46:13-15).

7

28. On February 29, 2008, Fouche was suspended for five days and given a final warning for his AWOLs on February 17 and 24, 2008. (Phelps Affidavit Ex. C, Giammusso Dep. 43:16-44:10; Phelps Affidavit, Ex. I).

29. Such suspension was in conformance with the terms and conditions of the CBA, which applies equally to all employees holding Fouche's title. (Phelps Affidavit Ex. C, Giammusso Dep. 46:5-22).

30. Fouche did not contest or further grieve the assessed discipline, as was his right under the CBA. (Phelps Affidavit, Ex. A, Fouche Dep. 157:11-23).

31. Fouche continued not to report for work as scheduled on Sundays, but notified the depot office in advance. As a result, Fouche's absences on those Sundays in March 2008 were not AWOLs, but counted against him under the attendance policy in the CBA, a separate disciplinary track that allows an Operator to accrue 20 absences before termination. (Phelps Affidavit, Ex. E, Attendance Policy, p. 81).

32. On Sunday, March 30, 2008, Fouche again failed to report for work and notify the depot office. This occurred despite Fouche's awareness of his obligation to notify the Depot Master. (Phelps Affidavit, Ex. K, Fouche disciplinary documents relating March 30, 2008 incident, Attendance Policy, p. 81).

33. Consequently, Fouche was terminated for his actions on March 31, 2008, at a First Step Hearing. Phelps Affidavit, Ex. K).

34. Fouche grieved his termination, as provided for in the CBA- which establishes four steps in the grievance process. (Phelps Affidavit, Ex. E).

35. At a Second Step Hearing, on April 24, 2008, Fouche was offered reinstatement to his former job as a part time operator, in an attempt to again accommodate Fouche's Sabbath. (Phelps Affidavit, Ex. L, Second Step Hearing Report dated April 24, 2008).

36. Fouche rejected such an offer of accommodation. As a result, the grievance was denied at the second step. (Phelps Affidavit, Ex. L).

37. In accordance with the CBA, Fouche's discharge proceeded to a Third Step Hearing. (Phelps Affidavit, Ex. E).

38. In a decision letter dated May 29, 2008, the Third Step Hearing Officer reinstated Fouche to full time operator, reducing the discharge to a time served suspension. (Phelps Affidavit, Ex. M, May 29, 2008 Letter from Hearing Officer Grandinetti).

39. In accordance with the CBA, after reinstatement following discharge, Fouche was ordered to go to NJ Transit's Medical Department for physical clearance to return to work on

9

Friday June 6, 2008, at 9:00 am, in Camden. (Phelps Affidavit, Ex. M).

40. Failure to attend the physical would constitute further grounds for discharge. (Phelps Affidavit, Ex. M).

41. Upon reinstatement, rather than return to work as a full time operator, Fouche chose not to return to work at NJ Transit. (Phelps Affidavit, Ex. A, Fouche Dep. 263:18-264:7, 281:1-24).

42. Fouche responded in a letter date June 2, 2008, declining to return to work. (Phelps Affidavit, Ex. N, June 2, 2008 letter from Fouche to NJ Transit).

43. NJ Transit again wrote to Fouche on June 6, 2008, clarifying Fouche's reinstatement, and again ordering Fouche to report to NJ Transit Medical for his physical, this time on June 13, 2008. (Phelps Affidavit, Ex. O, June 6, 2008 letter from NJ Transit to Fouche).

44. Fouche responded on June 9, 2008, acknowledging that he had been reinstated with time served, but declining to respond until counsel for him had reviewed the matter. (Phelps Affidavit, Ex. P, June 9, 2008 letter from Fouche to NJ Transit).

45. Fouche failed to appear for his physical, as ordered, on June 13, 2008. (Phelps Affidavit, Ex. Q, June 17, 2008 letter from NJ Transit to Fouche).

46. Fouche was discharged for his failure to appear at NJ Transit Medical on June 13, 2008, and notified in writing that a hearing on the matter was scheduled for June 25, 2008. (Phelps Affidavit, Ex. Q). Mr. Fouche never attended the hearing on June 25, 2008, and was discharged.

47. Because the seniority provisions in the CBA prevent NJ Transit from accommodating the Sabbath requests of bus operators, NJ Transit sought to negotiate a religious accommodation policy in the CBA with the ATU during negotiations on a new CBA. (Phelps Affidavit Ex. B, Sullivan Dep. 57:1-9).

48. NJ Transit proposed that ATU members seeking a Sabbath accommodation take their Sabbath off, and work one of their other regularly scheduled days off at regular or straight time, without overtime- as the contract currently provides. The ATU rejected NJ Transit's proposed religious accommodation policy, as it would have required the ATU to give up overtime on regular days off for bus operators with a Sabbath religious accommodation. (Phelps Affidavit Ex. B, Sullivan Dep. 57:17-58:25).

49. NJ Transit's proposal would have reasonably accommodated the Sabbath needs of NJ Transit's Bus Operators, including Fouche, without violating the contract, and would have been acceptable to Fouche. (Phelps Affidavit Ex. A, Fouche Dep. 127:4-19).

50. Fouche himself stated that was the type of accommodation he wanted, and was willing to work one of his regular days off for free, if necessary.(Phelps Affidavit Ex. A, Fouche Dep. 309:10-24).

51. The Union instead proposed a "temporary" solution that Fouche work four days a week, for a total of 32 hours a week, receive his Sabbath off, and fill Fouche's missed work with overtime by another Union member. (Phelps cert. Ex. B, Sullivan Dep. 61:2-63:17). Such a proposal also would require NJ Transit to violate the CBA, as currently bus operators are guaranteed 40 hours of work per week under the contract.  (Phelps Affidavit Ex. B, Sullivan Dep. 105:4-19). NJ Transit rejected the ATU's temporary solution.

52. To date, the Union and NJ Transit have not negotiated a comprehensive religious Accommodations Policy in the CBA.

53. Fouche asserts that the denial of his requested Sabbath accommodation was the only discriminatory act committed by NJ Transit against him.  (Phelps Affidavit, Ex. A, Fouche Dep. 307:5-22).

54. Fouche has never missed a Sabbath while working at NJ Transit. Fouche has observed every Sabbath since he accepted Christ in 1996, and that no job had prevented him from observing his Sabbath.  (Phelps Affidavit, Exhibit A, Fouche Dep. 54:2-55:4).

55. Fouche filed a complaint alleging religious discrimination with the New Jersey Division on Civil Rights and/or EEOC on or about May 22, 2008. On or about April 29, 2009, the EEOC issued Fouche a "right to sue letter" making no determination on the merits of Fouche's claim. (Phelps Affidavit, Exhibit S, Complaint and EEOC determination and right to sue letter dated April 29, 2009).

> Respectfully submitted,
>
> PAULA T. DOW
> ATTORNEY GENERAL OF NEW JERSEY
> Attorney for Defendant
> New Jersey Transit Corporation
>
> By: _____
> Adam K. Phelps
> Deputy Attorney General

Dated:   December 29, 2010