UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROGER FOUCHE, | : | Civil Case No.:  2:09-cv-03766 |
| Plaintiff, | : | Civil Action |
| vs. | : | |
| NEW JERSEY TRANSIT CORPORATION, | : | |
| Defendant. | : | |

---

**BRIEF IN SUPPORT OF NOTICE OF MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF DEFENDANT, NEW JERSEY TRANSIT CORPORATION**

---

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendant
New Jersey Transit Corporation

Adam K. Phelps, On the Brief
Deputy Attorney General
Department of Law and Public Safety
Division of Law
One Penn Plaza East - 4th Flr.
Newark, New Jersey 07105
(973) 491-7035

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................ 1

STANDARD OF REVIEW .............................................. 4

LEGAL ARGUMENT .................................................. 5

    POINT I ..................................................... 5

        FOUCHE FAILS TO ESTABLISH A PRIMA FACIE CLAIM OF
        RELIGIOUS DISCRIMINATION UNDER TITLE VII AND THE
        NJ LAD BECAUSE NJ TRANSIT DISCIPLINED FOUCHE FOR
        SEVERE RULES INFRACTIONS, NOT BECAUSE OF FOUCHE'S
        RELIGION. .............................................. 5

    POINT II .................................................. 10

        NJ TRANSIT DID NOT DISCRIMINATE AGAINST FOUCHE BY
        DENYING FOUCHE A SABBATH RELIGIOUS ACCOMMODATION,
        BECAUSE THE REQUESTED ACCOMMODATION WAS NOT
        REASONABLE AND WOULD HAVE CAUSED NJ TRANSIT UNDUE
        HARDSHIP. ............................................. 10

    POINT III ................................................. 18

        ANY CONSTITUTIONAL CLAIMS ASSERTED IN FOUCHE'S
        COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW .... 18

CONCLUSION .................................................... 19

## TABLE OF AUTHORITIES

### Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ....... 4, 5

Ansonia Bd. Educ. v. Philbrook, 479 U.S. 60 (1986) ........... 14

Beadle v. City of Tampa, 42 F.3d 633 (11th Cir. 1995) ........ 13

Brown v. Polk County, Iowa, 61 F.3d 650 (8th Cir. 1995) ...... 13

EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307 (4th
    Cir. 2008) ............................................ 13, 15

Gans v. Mundy, 762 F.2d 338 (3d Cir. 1985) .................... 5

Jose A. Lopez v. NJ Transit, Charge No. 17E901349 (1992) ..... 17

Lang v. New York Life Ins. Co., 721 F.2d 118 (3d Cir. 1983) ... 4

Shelton v. University of Med. & Dentistry, 223 F.3d 220 (3d
    Cir. N.J. 2000) ....................................... 6, 10

TWA v. Hardison, 432 U.S. 63 (1977) ...................... 10, 11

Webb v. City of Philadelphia, 562 F.3d 256 (3d Cir. Pa. 2009)
    .................................................... 10, 11

Weber v. Roadway Express, Inc., 199 F.3d 270 (5th Cir. Tex.
    2000) ................................................... 13

### Statutes

N.J.S.A. 27:25-2 ............................................. 1

N.J.S.A. 27:25-4 ............................................. 1

### Rules

Fed. R. Civ. P. 56(c) ....................................... 4

### Regulations

29 CFR § 1605 (2007) ....................................... 11

## PRELIMINARY STATEMENT

This brief is submitted in support of the motion for summary judgment filed by defendant, New Jersey Transit Corporation ("NJ Transit") to dismiss plaintiff Roger Fouche's ("Fouche") Complaint.[1] Fouche was a NJ Transit bus operator between approximately July 2006 and June 25, 2008, before his discharge from the company for being absent from work without permission, and, after reinstatement during the grievance process, his subsequent refusal to return to work.

NJ Transit is a public corporation. Its statutory mission is to provide an efficient, coordinated, safe and responsive public transportation system. N.J.S.A. 27:25-2; 27:25-4. NJ Transit provides bus, rail and light rail transportation services through the State of New Jersey. NJ Transit is a "24-7" operation, running buses all hours of the day, seven days a week.

To effectuate its bus operations, NJ Transit signed a negotiated labor agreement, or collective bargaining agreement ("CBA") with the Amalgamated Transit Union New Jersey Council ("ATU"), to which NJ Transit is bound that governs bus operator employment, discipline, wages and benefits. Most importantly, the CBA governs how full time bus operators chose available work

---

[1] In support of the instant motion, NJ Transit respectfully submits herewith, (1) Motion with affidavit of service; (2) Statement of Undisputed Material Facts; (3) Affidavit of Adam K. Phelps, Deputy Attorney General, verified December 29, 2010;

for its bus operations.   According to Section 10 of the CBA, full time bus operators choose work based on seniority.   The seniority system is fair- it ensures that no bus operator will be given preference of work above what that operator could choose in accordance with his seniority.   The CBA does not include any language providing for religious accommodations or shift swaps.   The existence of a seniority system, which establishes the rights of other similarly situated employees in plaintiff's job title, prevents NJ Transit from structuring the schedule of bus operators on an individualized basis.

While employed as a bus operator, Fouche was a member of Amalgamated Transportation Union Local 880 ("ATU Local 880"), a signatory to the CBA.   As a full time bus operator, and member of ATU Local 880, Fouche picked work based on seniority.   Due to Fouche's low seniority, Fouche was unable to hold down work that gave him Sundays, his Sabbath, off.   Instead, Fouche picked work that scheduled him to work on Sundays, his Sabbath. Picking such work did not enable Fouche to both work on Sundays as scheduled and also observe his Sabbath.   Fouche chose not to work on Sundays, as required by his seniority, and instead chose to celebrate his Sabbath.

Fouche's complaint asserts religious discrimination and violation by NJ Transit of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New Jersey Law Against Discrimination

("NJ LAD"), and interference with Fouche's constitutional right to freely practice his religion set forth in the first, fourth, and fourteenth amendments to the U.S. Constitution, when NJ Transit failed to accommodate Fouche's request for Sunday off as a Sabbath religious accommodation and subsequently discharged him.   As set forth herein, NJ Transit asserts that Fouche fails to establish a prima facie case of religious discrimination, and that as a matter of law, Fouche cannot establish a claim under the Title VII, the NJ LAD, or the U.S. Constitution.   By Fouche's own admission, at no time was Fouche's religious practice ever interfered with.

NJ Transit acted consistently with its longstanding equal opportunity in employment policy, and in accordance with federal law and established EEOC guidelines, when it considered and denied Fouche's request for religious accommodation.   First, NJ Transit had no obligation to provide Fouche with the requested accommodation, Sunday off. Due to the existence of a bona fide seniority system established in the CBA, such an accommodation would cause NJ Transit undue hardship, and therefore was not reasonable.   NJ Transit offered Fouche an alternative reasonable accommodation, part time employment, which Fouche rejected. Second, Fouche was not discharged due to his religion. Rather, Fouche was discharged for a series of severe infractions of NJ Transit's operating rules and policies, all the result of

Fouche's own actions and choices arising independently of his religion. Fouche was disciplined for such actions in conformance with the terms and conditions of a negotiated labor agreement, to which both Fouche and NJ Transit are bound. The discipline was applied to Fouche in the same manner it applied to all others holding Fouche's title. Thus, the adverse action taken again Fouche was on its face, just and non-discriminatory. As a result, Fouche's complaint is without merit, and should be dismissed.

## STANDARD OF REVIEW

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 2nd 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

A non-moving party must do more than rely only "upon bare assertions, conclusory allegations or suspicions," Gans v.

Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010, 106 U.S. Ct. 537, 88 L.Ed. 2nd 467 (1985). Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative", the court may grant summary judgment. Anderson v. Liberty Lobby, Inc., supra, 477 U.S., at 259-50.

Such is the case here. None of the essential facts regarding Fouche's hire, promotion to full time operator, request for Sabbath accommodation, and NJ Transit's denial of the requested accommodation is in genuine dispute. Nor does Fouche dispute his discharge. Most importantly, Fouche does not dispute that a valid CBA exists between NJ Transit and the ATU, and that the CBA contains a seniority system which determines what work operators can pick. The only disagreement is whether NJ Transit's reason for denying the requested accommodation, undue hardship arising from the existence of that seniority system, is a valid reason. Summary Judgment is appropriate for such a determination.

## LEGAL ARGUMENT

### POINT I

**FOUCHE FAILS TO ESTABLISH A PRIMA FACIE CLAIM OF RELIGIOUS DISCRIMINATION UNDER TITLE VII AND THE NJ LAD BECAUSE NJ TRANSIT DISCIPLINED FOUCHE FOR SEVERE RULES INFRACTIONS, NOT BECAUSE OF FOUCHE'S RELIGION.**

At no time was Fouche discharged for observing his Sabbath. Rather, Fouche was discharged for repeated serious violations of

NJ Transit rules- first for several AWOLs, and after his reinstatement during the grievance process, for Fouche's failure to appear at NJ Transit Medical Services. As a result, Fouche cannot establish a prima facie claim of religious discrimination because no adverse action was taken against Fouche because of his religion.

Title VII of the 1964 Civil Rights Act requires employers to make reasonable accommodations for their employees' religious beliefs and practices, unless doing so would result in undue hardship to the employer.[2] Shelton v. University of Med. & Dentistry, 223 F.3d 220, 224 (3d Cir. N.J. 2000). To prevail, Fouche must establish a prima facie case of religious discrimination. To establish a prima facie case, Fouche must demonstrate a sincere religious belief that conflicts with a job requirement; that he informed NJ Transit of the conflict; and that he was disciplined for failing to comply with the conflicting requirement. Shelton v. University of Med. & Dentistry, 223 F.3d at 224. For purposes of this motion, NJ Transit concedes that Fouche has a sincerely held religious belief, and that he informed NJ Transit of that belief. However, Fouche fails the third element. NJ Transit did not

---

[2]  Because Title VII and the NJLAD are similar regarding religious discrimination and both require establishment of a prima facie claim of religious discrimination, and provide for similar defenses of undue hardship by employers, NJ Transit addresses both Title VII and the NJ LAD in this brief when addressing plaintiff's requirement of establishing a prima facie claim of discrimination, and defendant's assertion of undue hardship.

discipline Fouche for failing to comply with the conflicting requirement. NJ Transit disciplined Fouche not for failing to show up and observing his Sabbath, but for Fouche's failure to notify NJ Transit that he was not showing up for work.

NJ Transit first discharged Fouche for a series of AWOLs. Fouche was first AWOL on February 17, 2008 and next on February 24, 2008. (Phelps Affidavit, Exhibits "A," and "I"). Fouche received a five day suspension and final warning for the February 17 and 24, 2008 AWOLs, which were combined into one infraction. (Phelps Affidavit, Exhibit "I"). Absence without permission, or AWOL, set forth in NJ Transit's operating rules at rule 402, requires that all bus operators who fail to report to work as scheduled must notify the Depot Master prior to their scheduled start time or within four hours after their scheduled start time. (Phelps Affidavit, Exhibit "J"). It is not an onerous requirement- simply notify the garage that you are not coming into work. There is no set time or date an operator must notify the garage- one can notify the garage a day in advance, or a week in advance. However, AWOL is a serious infraction at NJ Transit because it leaves garages short staffed without proper notice. (Phelps Affidavit, Exhibits "C" and "J"). In effect, an operator being AWOL prevents NJ Transit from meeting its statutory requirement to provide reliable bus service. Fouche had no Sabbath accommodation from NJ Transit. (Phelps

Affidavit, Exhibit "A"). Thus, under standard NJ Transit rules, if and when Fouche was going to be absent on Sundays, he had to notify the garage.

Due to the severity of an AWOL, the discipline for a second AWOL is usually discharge. (Phelps Affidavit, Exhibit "C"). Fouche was AWOL again on March 30, 2008. (Phelps Affidavit, Exhibit "K"). As a result, he was discharged. Fouche's refusal to abide by simple operating rules arose independent and outside of his religious practice. Fouche could easily have avoided the AWOLs that led to his discharge through a simple phone call. (Phelps Affidavit, Exhibit "C"). Yet he chose not to call. (Phelps Affidavit, Exhibits "I" and "K"). This point is best illustrated by the fact that between February 24, 2008, Fouche's second AWOL, and March 30, 2008, Fouche's third AWOL, a full month passed where Fouche properly notified the garage he was not reporting for work- and Fouche received no discipline for AWOL by properly reporting his absence. Thus, Fouche knew and understood that as long as he notified the garage, he would not receive an AWOL.

In accordance with the standard grievance process established in the CBA, Fouche's discharge proceeded through the first three grievance steps. (Phelps Affidavit, Exhibits "E," "K" and "L"). At the second step grievance hearing, NJ Transit offered Fouche reinstatement to his position as a part-time bus

operator, a position that previously accommodated Fouche's religion, and would again allow Fouche his Sabbath off. (Phelps Affidavit, Exhibit "L"). Fouche chose not to return as a part time operator. NJ Transit then reinstated Fouche at the third step grievance hearing, with no pre-conditions other than time served. (Phelps Affidavit, Exhibit "M"). Such a time-served reinstatement is a common outcome of such AWOL charges, and is generally welcomed by an employee who might otherwise face discharge. But not by Fouche.

After reinstatement, it was Fouche who refused to return to work, in any capacity. As Fouche notes himself, he exercised his "God given ability of choice" not to return to work. (Phelps Affidavit, Exhibit "N"). By exercising his choice not to return to work, Fouche was ignoring the direct order of the third step hearing officer who reinstated him, and ordered Fouche to report to NJ Transit's Medical Department for a return to work physical not once, but twice. (Phelps Affidavit, Exhibits "M" and "O"). As a result, Fouche was discharged on June 25, 2008 for his failure to report to NJ Transit Medical. (Phelps Affidavit, Exhibit "Q"). Again, it was Fouche's decision not to return to work at NJ Transit, despite reinstatement, that led to his final discharge. NJ Transit cannot force someone to return to work who, like Fouche, does not want to work.

## POINT II

**NJ TRANSIT DID NOT DISCRIMINATE AGAINST FOUCHE BY DENYING FOUCHE A SABBATH RELIGIOUS ACCOMMODATION, BECAUSE THE REQUESTED ACCOMMODATION WAS NOT REASONABLE AND WOULD HAVE CAUSED NJ TRANSIT UNDUE HARDSHIP.**

NJ Transit did not discriminate against Fouche when NJ Transit denied Fouche's request for a Sabbath accommodation, because Fouche's requested accommodation, Sunday off, was not reasonable and would have caused NJ Transit undue hardship by requiring NJ Transit to violate a bona fide seniority system. In order for a request for religious accommodation to be granted, it must be reasonable. See TWA v. Hardison, 432 U.S. 63 (1977) (where the Supreme Court held that an employer had no obligation to grant the requested Sabbath accommodation of an employee, when such an accommodation would violate the seniority rights of other employees, and cause an employer undue hardship by requiring employer to violate an existing CBA). Assuming for the sake of argument that Fouche can establish a prima facie claim of religious discrimination here, the burden shifts to NJ Transit to demonstrate that the accommodation was not reasonable. Shelton, 223 F.3d at 225. In order for a requested religious accommodation to be reasonable, it must not cause an employer undue hardship. Hardison, 432 U.S. at 66.

Undue hardship is not a difficult threshold to pass. Webb v. City of Philadelphia, 562 F.3d 256 (3d Cir. Pa. 2009). An accommodation constitutes an undue hardship if it would impose more than a de minimis cost on the employer. Hardison, 432 U.S. at 66. Both economic and non-economic costs can pose an undue hardship upon employers. Webb v. City of Philadelphia, 562 F.3d at 260. Importantly, undue hardship, as established in *Hardison* and set forth administratively by the EEOC, exists when the requested accommodation would require an employer to violate the terms of a bona fide seniority system. See 29 CFR § 1605 (2007); TWA v. Hardison, 432 U.S. 63 (1977). Such is the case here.

Accommodating Fouche by giving him Sunday off, as he requested, would require NJ Transit to violate the seniority system established in Section 10 of its CBA with the ATU. (Phelps Affidavit, Exhibits "B" and "E"). The seniority system established in Section 10 is bona fide, and longstanding. According to the President of ATU Local 880, Fouche's Union, the seniority system is sacred. (Phelps Affidavit, Exhibit "B"). Under it, an employee's seniority is a benefit which accrues as a function of length of service. Seniority controls the ability of full time operators to bid on runs. (Phelps Affidavit, Exhibits "B" and "E"). As noted above, work is divided into runs, and the runs are selected (picked) in accordance with relative seniority. (Phelps Affidavit, Exhibits "B" and "E").

Like everyone else, Fouche could not select or pick his work until others with greater seniority had picked theirs. (Phelps Affidavit, Exhibits ("A," "B" and "E").   Unilaterally granting Fouche the accommodation he sought would give him work that other operators, with greater seniority, were entitled to pick. Granting the accommodation would countermand the purpose of the seniority provision, and place NJ Transit in violation of Section 10 of the labor contract.

This is illustrated by exactly what happened at the Newton Ave. Garage in January and February 2008.  When Fouche initially selected his work in January 2008, despite Fouche's low seniority, he chose work that gave him Sunday off. (Phelps Affidavit, Exhibits ("A").   As a result, Fouche required no accommodation at that time. (Phelps Affidavit, Exhibits ("A"). After a bus operator out sick returned to the garage, a bump bid commenced in February 2008, that required Fouche to pick again. When Fouche selected his work in the bump bid, there were no runs available that were compatible with his religious obligations.

At that point, to accommodate Fouche's Sabbath request, NJ Transit would have had to take someone with more seniority off of their chosen work, and give that work to Fouche. Such a move would deprive another operator with greater seniority of their picked work, giving a benefit to Fouche that Fouche did not

deserve based on seniority.   Thus, the discrimination that Fouche alleges arises directly as a result of the operation of a bona fide seniority system, interference with which would subject NJ Transit to liability to other employees for depriving them of their contract rights, which in turn would constitute an undue hardship for Respondent. (Phelps Affidavit, Exhibits "B" and "D").

NJ Transit's position regarding Sabbath accommodations is borne out in the courts.   In one of the most recent decisions on the matter, upholding summary judgment on behalf of an employer who was sued by EEOC for failing to provide a Sabbath religious accommodation to an employee under similar circumstances, an appeals court found that employers such as NJ Transit have no obligation to offer such an accommodation. EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307 (4th Cir. 2008), a copy of which is annexed hereto as Exhibit O.   The court in *Firestone*, 515 F.3d at 317 noted that:

> "It is perfectly permissible for an employer to consider the impact it would have on a seniority-based scheduling system as well as on other employees. While such considerations may not be based on mere speculation or conjecture, see Brown v. Polk County, Iowa, 61 F.3d 650, 655 (8th Cir. 1995) (en banc), an employer is not required "to wait until it [feels] the effects" of the proposed accommodation before determining its reasonableness, see Weber, 199 F.3d at 275 (citing Beadle v. City of Tampa, 42 F.3d 633 (11th Cir. 1995)). Indeed, employers must be given leeway to plan their business operations and possible accommodative options in advance, relying on an accommodation's predictable consequences along the

way. If an employer reasonably believes that an accommodation would entail a violation of the applicable CBA or impose "more than a de minimis impact on coworkers," then it is not required to offer the accommodation under Title VII.

The court in Firestone found that Firestone made reasonable efforts to accommodate its employee short of violating an established seniority system. Applied here, NJ Transit was under no obligation to offer Mr. Fouche the accommodation he sought, Sundays off, because such an accommodation would cause NJ Transit to violate the seniority provision of its applicable CBA. Both the Union and the Company agree on this point. (Phelps Affidavit, Exhibit "B"). Thus, by law, the requested accommodation was not reasonable.

NJ Transit also made reasonable efforts to accommodate Fouche. An employer is not statutorily required to offer an employee his or her preferred accommodation in circumstances where a sufficient accommodation has already been provided. Ansonia Bd. Educ. v. Philbrook, 479 U.S. 60, 68-69 (1986). While courts do not require NJ Transit to offer Fouche an accommodation that causes undue hardship, NJ Transit offered Fouche a sufficient reasonable accommodation- continued employment as a part time bus operator. As Fouche himself noted, the part time bus operator position accommodated Fouche because part time bus operators do not pick work based on seniority, and can choose their availability as it suits them.

(Phelps Affidavit, Exhibit "A"). As a part time operator, Fouche was able to take Sundays off and observe his Sabbath. (Phelps Affidavit, Exhibit "A").

Such an offer of continued part-time employment was made to Fouche when he first accepted promotion to full time bus operator, and after Fouche was disciplined, was again offered at the second and third step hearings. Fouche rejected such an offer every time. While part time employment is not necessarily ideal (part time employment comes without benefits, and with a maximum of 30 hours of work per week), the test is not whether an accommodation is perfect, but whether it is reasonable. "A duty of 'reasonableness' cannot be read as an invariable duty to eliminate the conflict between workplace rules and religious practice. Firestone, 515 F.3d at 314.

When undue hardship exists, EEOC's guidelines suggest lateral transfers, shift swaps and flex-time work as possible reasonable accommodations. None of those options were available to NJ Transit here. Voluntary substitutions and swaps are not available under the CBA. (Phelps Affidavit, Exhibit "E"). The restrictions of Sections 3, 4, 7, 8, 10, and 11 of the CBA combine to make any exchange of work by contract employees violate the rights of other employees in their title. (Phelps Affidavit, Exhibit "E"). Absent the inclusion of shift swaps in the contract, NJ Transit cannot unilaterally approve such swaps.

No lateral positions existed at the time, nor did Mr. Fouche ever indicate a willingness to be considered for one. Flex-time is not an option under the applicable labor agreement, nor because of the unique nature of NJ Transit's operations.

Most importantly, NJ Transit's preferred reasonable accommodation, allowing bus operators to take their Sabbath off and work one of their regularly scheduled days off at their regular pay, or straight time, was rejected by the ATU. (Phelps Affidavit, Exhibit "B"). Under the current CBA, bus operators receive overtime, or time and a half, for all work they perform on their regular days off. (Phelps Affidavit, Exhibits "B" and "E"). Thus, allowing a bus operator seeking a Sabbath accommodation to work on their regular day off, at overtime rates, significantly increases the costs to NJ Transit in a more than de minimis manner- meeting the undue hardship threshold. NJ Transit proposed changing the pay rate in the CBA from overtime to regular pay for Sabbath accommodated operators working on their regular day off. (Phelps Affidavit, Exhibit "B"). That change would have allowed NJ Transit to accommodate the religious needs of bus operators without incurring an undue hardship of increased costs (overtime when compared to straight time). The Union was, and is, unwilling to change the CBA this way to accommodate bus operators who need a Sabbath accommodation. (Phelps Affidavit, Exhibit "B"). NJ Transit

cannot unilaterally change the CBA. Given the strictures of the contract, and the requirements of NJ Transit's bus operations, employment as a part time operator was the only reasonable accommodation NJ Transit could offer Fouche. Because of the existence of a bona fide seniority system, and NJ Transit's offer of a part time employment to Fouche, as a matter of law, NJ Transit has established undue hardship, and that it offered Fouche a reasonable accommodation.

Further, NJ Transit's actions in denying Fouche's requested Sabbath accommodation are consistent with the law, and prior guidance from the EEOC to NJ Transit on Sabbath accommodations. In a similar matter brought before the EEOC, the EEOC determined that NJ Transit's actions, including offering part time employment, were legitimate and non- discriminatory, when NJ Transit denied the request of a full time bus operator for a Sabbath accommodation. In Jose A. Lopez v. NJ Transit, Charge No. 17E901349 (1992), a full time bus operator, Lopez, sought a Sabbath accommodation from NJ Transit. (Phelps Affidavit, Exhibit "R"). In almost every respect, NJ Transit's actions in Lopez were virtually identical to its actions here.

As in the current matter, Lopez's seniority precluded him from picking work that gave him his Sabbath off. Lopez failed to show for work, and was severely disciplined as a result. NJ Transit denied the requested accommodation, due to the Seniority

17

provision of the CBA.   As in the current matter, NJ Transit made several efforts to accommodate Lopez, including a position as a part time operator, which Lopez refused.   The EEOC in Lopez found that to accommodate Lopez as Lopez desired would require NJ Transit to violate a bona-fide seniority system.   (Phelps Affidavit, Exhibit "R"). Such an accommodation would thus be an undue hardship to NJ Transit, and was not required under the law. (Phelps Affidavit, Exhibit "R"). Thus, EEOC determined that NJ Transit did not violate Title VII of the Civil Rights Act, when it denied Lopez the accommodation he sought.   (Phelps Affidavit, Exhibit "R").   NJ Transit requests that this court, consistent with the EEOC's determination in Lopez, find NJ Transit did not discriminate in the current matter under similar facts.

### POINT III

### ANY CONSTITUTIONAL CLAIMS ASSERTED IN FOUCHE'S COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW

As a final note, NJ Transit never prevented Fouche from exercising his constitutional right to practice his sincerely held religious beliefs.   In his complaint, Fouche vaguely asserts that NJ Transit interfered with Fouche's constitutional right to freely practice his religion, in violation of the first, fourth, and fourteenth amendments to the United States Constitution. Fouche appears to confuse his constitutional right

to freely practice his religion, with his legal rights under the law to have a workplace accommodation of his Sabbath.[3]   No evidence has come out in discovery that NJ Transit ever interfered with Fouche's right to practice his religion.   If anything, Fouche testified to the opposite at his deposition. Under oath, Fouche explicitly stated that he has never missed a Sabbath while working at NJ Transit.   (Phelps Affidavit, Exhibit "A").   Fouche further testified that he had not missed a Sabbath since he accepted Christ in 1996, and that no job, including NJ Transit had prevented him from observing his Sabbath. (Phelps Affidavit, Exhibit "A").   Thus, by Fouche's own view, his right to practice his religion has not been interfered with.   As a result, Fouche's bogus constitutional claims must be dismissed as a matter of law.

## CONCLUSION

In conclusion, Fouche was not denied a reasonable religious accommodation; he was offered an accommodation that was reasonable. Fouche was merely denied the religious accommodation he preferred, because granting that accommodation would cause NJ Transit undue hardship. Once the requested unreasonable accommodation was denied, and Fouche refused to accept the reasonable accommodation offered to him by Respondent, it was Fouche's own actions, not NJ Transit's, that led to his eventual

---

[3] To the extent that Title VII of the Civil rights Act and the NJ LAD implicate Fouche's constitutional rights to the free exercise of religion, NJ Transit incorporates herein the arguments made in Points One and Two above

discharge.   Accordingly, NJ Transit respectfully requests that the complaint be dismissed as a matter of law.

                              Respectfully submitted,

                              PAULA T. DOW
                              ATTORNEY GENERAL OF NEW JERSEY
                              Attorney for Defendant
                              New Jersey Transit Corporation

              By:    _____
                              Adam K. Phelps
                              Deputy Attorney General

Dated:   December 29, 2010