NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROGER FOUCHE,<br><br>                                   Plaintiff,<br><br>                    v.<br><br>NEW JERSEY TRANSIT CORP.,<br><br>                                   Defendant. | Civil Action No. 2:09-cv-03766 (SDW)<br><br><br>**OPINION**<br><br><br>July 11, 2011 |

**WIGENTON**, District Judge.

Before the Court is Defendant's Motion for Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 42 U.S.C. § 2000(e)-5(f).  Venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000(e)-5(f)(3).  This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.   For the reasons stated below, this Court **GRANTS** Defendant's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Roger Fouche began working at the New Jersey Transit Corporation ("NJ Transit") as a part-time bus driver.  (Complaint, ¶ 8, July 27, 2009.)  In December 2007, Fouche was offered a position as a full-time driver, which commenced on January 12, 2008.  (Compl., ¶ 10; Ex. G.)  During Fouche's tenure at NJ Transit, Fouche's union, Amalgamated Transit Union Local 888 ("ATU"), had a collective bargaining agreement ("CBA") with NJ Transit that governed bus driver employment, discipline, wages, and

1

benefits. (*See generally* Ex. E.)  Most notably, the CBA contained a provision whereby bus drivers choose their work schedules based on seniority.  (Ex. B at 36.)

In January 2008, Fouche, a Christian, was able to schedule Sundays off, his day of Sabbath.  (Ex. C at 38.)  In February, however, a full-time driver with higher seniority than Fouche returned to work, rendering Fouche unable to pick a schedule that gave him Sundays off.  (Ex. H.)  As a result, Fouche missed work on Sunday February 17, 2008, and Sunday February 24, 2008, to observe his Sabbath, and both times was considered absent without leave ("AWOL").  (Ex. C at 41-44.)  NJ Transit's attendance policy states that a driver's failure to notify the company that he will not be reporting for work prior to his scheduled start time, or within four hours after, is considered AWOL.  (*Id.* at 41.)

As per the CBA, if a driver is AWOL one time, there is a disciplinary hearing and the driver is given a five-day suspension and a final warning.  (*Id.*)  If a driver is AWOL a second time, he is discharged.  (*Id.* at 41-42.)  In Fouche's case, however, his two consecutive AWOLs were treated as one and were considered in one disciplinary hearing.[1]  (*Id.* at 44.)  Rather than terminated, Fouche was given a five-day suspension and a final warning.  (*Id.*; Ex. I.)

Following his suspension and final warning, Fouche continued not to report to work as scheduled on Sundays, but notified NJ Transit in advance.  (Ex. E at 148-52.)  As a result, Fouche's absences on those days were not AWOLs, but counted against him under the attendance policy in the CBA, a separate disciplinary track that allows a driver to accrue twenty absences before termination.  (*Id.*)  On Sunday, March 30, 2008,

---

[1] Fouche's two AWOLs were considered as one because the AWOLs were on two consecutive Sundays leaving no opportunity to hold a hearing between the first and second AWOL. (Ex. C at 44.) NJ Transit was not required to do this under the CBA, but did it out of fairness. (*Id.* at 43-44.)

however, Fouche failed to notify NJ Transit when he did not report to work. (Exhibit K.) As a result, Fouche was terminated at a First Step Hearing. (*Id.*)

Fouche grieved his termination, as provided by the CBA, which establishes four steps in the grievance process. (Ex. E at 2-4.) At a Second Step Hearing, on April 24, 2008, Fouche was offered reinstatement to his former job as a part-time driver, a position that would—and did—accommodate his Sabbath. (Ex. L.) Fouche rejected this offer. (Ex. L.) Thus, in accordance with the CBA, the grievance process proceeded to a Third Step Hearing, where Fouche was reinstated as a full-time driver. (Ex. M.)

In accordance with the CBA, after reinstatement following discharge, Fouche was ordered to report to NJ Transit's Medical Department on Friday June 6, 2008, for physical clearance to return to work. (*Id.*) Fouche responded in a letter dated June 2, 2008, declining to return to work. (Ex. N.) NJ Transit again wrote Fouche on June 6, 2008, clarifying Fouche's reinstatement, and again ordering Fouche to report to NJ Transit's Medical Department for a physical, this time on June 13, 2008. (Ex. O.) Fouche responded on June 9, 2008, acknowledging that he had been reinstated, but declined to respond until conferring with counsel. (Ex. P.) Fouche failed to appear for his physical, as ordered, on June 13, 2008. (Ex. Q.) Fouche was discharged for his failure to appear at NJ Transit's Medical Department on June 13, 2008, and was notified in writing that a hearing on the matter was scheduled for June 25, 2008. (*Id.*) Fouche never attended the hearing on June 25, 2008, and was discharged.

Fouche alleges that his termination was a result of his choice to observe his Sabbath. (*See* Compl., ¶ 1.) NJ Transit alleges that Fouche was terminated for his numerous AWOLs and severe rule infractions. (Def.'s Br. at 5-6, December 29, 2010.)

Fouche filed his Complaint on July 27, 2009, against NJ Transit, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") as well as the New Jersey Law Against Discrimination ("NJLAD").  (Compl., ¶ 4.)

**LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party.  *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at

4

325).  "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ."  *Celotex Corp.*, 477 U.S. at 324.  A motion for summary judgment is meant to go beyond the pleadings and therefore "factual specificity is required of a party who opposes such a motion."  *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case."  *Id.*  If the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

## DISCUSSION

### Title VII

In accordance with Title VII,  employers must "make reasonable accommodations for their employees' religious beliefs and practices, unless doing so would result in 'undue hardship' to the employer."  *Shelton v. Univ. of Med. & Dentistry*, 223 F.3d 220, 224 (3d Cir. 2000).  Title VII declares that it is unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
>
> [42 U.S.C. § 2000e-2(a).]

To establish a prima facie case of workplace discrimination under Title VII, the plaintiff must satisfy three elements: (1) he "holds a sincere religious belief that conflicts with a job requirement"; (2) he "informed [his] employer of the conflict"; and (3) he "was disciplined for failing to comply with the conflicting requirement." *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d at 224. In the present case for the purposes of this motion, it is undisputed that Fouche satisfied the first two elements; it is conceded that Fouche is a Christian, and it is likewise conceded that he informed NJ Transit that this faith created a conflict between his work schedule and his Sabbath.

However, he has failed to satisfy the third element because even when the evidence is viewed in the light most favorable to Fouche, it is clear that he was not disciplined for observing his Sabbath. First, Fouche was not discharged for his absences but for failing to report for his medical exam as required for his reinstatement. Second, any discipline prior to his discharge was due to his absences without leave.

Nancy Giammusso testified that under the CBA two AWOLs are cause for termination of the employee. (Ex. C.) Fouche received two AWOLs in February of 2008, but these AWOLs were consolidated as one and Fouche received the penalty commensurate with one AWOL. Fouche received a third AWOL in March of 2008 and was subsequently terminated, the penalty commensurate with two AWOLs. As per the CBA, NJ Transit did not discipline or terminate Fouche for absences of which he notified them in advance. These absences were not considered AWOLs, but were considered absences on a separate disciplinary track. Fouche was only terminated when he received AWOLs for his failure to notify NJ Transit that he would not be reporting for work.

Further, even if Fouche had established a prima facie case for a Title VII claim, NJ Transit has put forth sufficient evidence to demonstrate a good faith effort on its part to provide a reasonable accommodation. If the employee establishes a prima facie case of employment discrimination, the burden shifts to the employer to show that it has made a good faith effort to offer reasonable accommodations, or that the requested accommodation would work an undue hardship on the employer. *Shelton*, 223 F.3d at 224.

While Title VII does not define what is a "reasonable accommodation," the Supreme Court has made clear that a "sufficient religious accommodation need not be the 'most' reasonable one (in the employee's view), it need not be the one the employee suggests or prefers, and it need not be the one that least burdens the employee. . . . [T]he employer satisfies its Title VII religious accommodation obligation when it offers any reasonable accommodation." *Id.* at 225 (citation omitted) (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986)). For a requested religious accommodation to be reasonable, it must not subject an employer to undue hardship. *Trans. World Airlines v. Hardison*, 432 U.S. 63, 66 (1977). Undue hardship is not a difficult threshold to satisfy; "[a]n accommodation constitutes an 'undue hardship' if it would impose more than a *de minimis* cost on the employer." *Webb v. City of Phila.*, 562 F.3d 256, 259-60 (citing *Hardison*, 432 U.S. at 84); *see also Prise v. Alderwoods Group, Inc.*, 657 F. Supp. 2d 564, 599-600 (W.D. Pa. 2009) (stating that employees do not have "an absolute, unqualified right to be free from disciple for refusing to work" on a day for religious observance and "courts have consistently held that Title VII does not require an employer

7

to force  other employees to work on a particular day in order to accommodate a specific employee's desire to observe a religious holiday or Sabbath").

Fouche's requested accommodation was unreasonable because it would impose more than a *de minimis* cost on NJ Transit and therefore constitutes an undue hardship. Accommodating Fouche by giving him his Sabbath off would require NJ Transit to violate the seniority system established by the CBA.  Unilaterally granting Fouche this accommodation would divert work that other operators, with greater seniority, were entitled to pick.  This would upend the longstanding seniority system and would place NJ Transit in violation of the CBA.  Such an accommodation would impose more than a *de minimis* cost on NJ Transit and is therefore unreasonable.

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is **GRANTED.**  Further, this Court declines to exercise jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties